# Hays & Black *versus* The Pittsburgh and Steubenville Railroad Company.

*Variance.—Evidence of Liability derived from Conduct of Stockholder.—Validity of Calls by Treasurer of Corporation.— Transfer of Stock.*

1. It is not error to admit in evidence a contract of subscription varying from that declared upon, where it worked no injury to defendants, who were proved liable otherwise by acts of participation in the company's affairs, such as voting, acting as directors, judges, &c., and active exertions to obtain a municipal subscription on the faith of a subscription certified to have been made by the parties so acting.

2. Such acts are not merely evidential of an original subscription, but are conclusive, amounting to an estoppel upon the parties against denying it. It is primary and not secondary evidence.

3. Calls made by the treasurer under general authority given by the board are valid, although the resolutions did not specify the amount of each call.

4. An omission to record a call for a particular instalment is supplied by the record of a call for all other unpaid instalments.

5. Entries of credit on the books for stock assigned are worthless, if founded on a transfer which did not discharge the assignor's liability.

ERROR to the District Court of *Allegheny county*.

This was an action on the case by the Pittsburgh and Steubenville Railroad Company against Robert S. Hays and George Black, partners trading as Hays & Black, to recover an alleged subscription for one hundred shares of stock of said company, amounting to $5000, and the penalty of twelve per cent. interest thereon. The declaration as amended averred that on the 14th of July 1851, the defendants subscribed for one hundred shares of stock of the said Pittsburgh and Steubenville Railroad Company, of the value of fifty dollars each, on the books of the commissioners appointed by an Act of Assembly of this Commonwealth, dated the 24th day of March, A. D. 1849, and paid the first instalment of five dollars on each share so subscribed, viz., five hundred dollars on all said shares, the said subscription amounting in all to five thousand dollars, and then and there agreed and promised to pay the said amount from time to time, when the same should be called for, according to the provisions of the Acts of Assembly of said Commonwealth regulating railroad companies, by reason of which subscription and promise the said defendants became liable to pay the said plaintiffs the aforesaid sum of five thousand dollars when the same should be requested to be paid. That the said moneys were duly called for, and the said defendants requested to pay five dollars on each share so subscribed, on the 12th day of August 1852; and five dollars on each share so subscribed, on the 24th day of Septem-

2 WR.—6

[Hays & Black *v.* Pittsburgh and Steubenville Railroad Co.]

ber, A. D. 1852; and five dollars on each of the aforesaid shares, on the first day of December in the same year; and five dollars on each of said shares, on the first of January 1853; and five dollars on each of said shares, on the first day of each month occurring thereafter, until the whole amount due and subscribed for on said shares should have been fully and entirely paid. That the said moneys were duly called for agreeably to the eighth section of the Act of said Commonwealth regulating railroad companies, and due and public notice of said calls published, likewise, according to said Act, whereby the said defendants then and there became liable to pay the amount so subscribed, with further penalty of one per cent. per month upon the amount aforesaid for and since the delay of payment, and being so liable the said defendant afterward, to wit, on the first of June in the same year, agreed and promised to pay the aforesaid principal sum and the said further sum of one per cent. per month for and during the delay of payment from and after the days whereon said sums or instalments were severally so called. But although thus frequently requested, said defendants failed, &c.

The plea was *non assumpsit.* On the trial of the cause, in the absence of the original subscription-book, which, according to the testimony of the company's secretary, could not be found among the books and papers of the company, the plaintiffs offered in evidence and relied on the following matters, which it was contended estopped the defendants from denying that they had made a valid subscription for one hundred shares to the capital stock of the company, to wit: That the defendants were returned by the commissioners and incorporated by the letters patent as stockholders owning one hundred shares, which report of the commissioners and letters patent were ordered to be engrossed on the minutes on the 4th of December 1851, and were so engrossed. That Black, one of the defendants, was elected a director on the 12th day of January 1852, re-elected on the 10th day of January 1853, and continued to act as such till July 6th 1853, when he resigned. That R. S. Hays, the other defendant, was elected a director on the 8th of January 1855, attended the meetings of the board, and took an active part in the business of the company till the 2d day of July 1855, when he resigned. That Black was present at nearly all the meetings of the board while he was a director, and actively participated in the proceedings. That on the 12th of January 1852, the defendants paid $500 on account of said subscription, being five dollars a share; and on twenty shares of their subscription they paid nine instalments, of $100 each, viz., on the 17th September 1852, on the 25th September 1852, December 14th 1852, January 10th 1853, February 7th 1853, April 12th 1853, June 10th 1853, June 20th

1853, June 20th 1853, June 20th 1853. That Black was present at the meeting of the directors of August 5th 1852, at which were read and approved the minutes of the preceding meeting of July 1st 1852, when the second instalment was called in. He was also present at a meeting of the board on the 12th of November 1852, when the fourth and all subsequent instalments were called in, and voted for the call, and with his knowledge the firm of Hays & Black were returned to the mayor as subscribers for one hundred shares of stock, with a credit of $500 paid thereon, as a preliminary to obtaining the subscription of the city of Pittsburgh to the stock of the company; and was one of the committee of the company to procure said subscription. That he was also a member of the committee on accounts, to which was referred the report of the treasurer of the company, showing that Hays & Black were subscribers for one hundred shares of stock, upon which they had paid $500.

That the defendants, on the 25th of May 1852, assumed to be the proprietors of this same stock, by assigning eighty-one shares of it to Edwin M. Stanton; which assignment was made in pursuance of the letter of Edwin M. Stanton, of 17th September 1851.

The plaintiff further showed by the testimony of Sidney F. Von Bonnhorst, that there were no transfers of stock made by subscribers or others to the defendants, and that the names of Hays & Black only appeared on the books of the company as original subscribers.

The defendants' counsel then produced a subscription-book which he had received from Mr. Stanton, one of the persons named in the letters patent, the heading of which on the first page was as follows:—

"For the purpose of connecting Pittsburgh, by a railroad, with the Steubenville and Indiana Railroad Company, the undersigned will subscribe the number of shares and amounts set opposite to our names.

"Pittsburgh, July 14th 1851."

There were no names subscribed thereto on the said first page. On the second page, the heading is as follows:—

| | Number of shares. | Amounts. |
|---|---|---|
| Edwin M. Stanton, . . . . | 100 | $5000 |

On the third page are seven names, in the handwriting of

Mr. Stanton; and on the same page are the names of Hays & Black, in the handwriting of George Black, one of the defendants, for 100 shares, amount $5000; together with other signatures, some in the handwriting of Mr. Stanton, and some in the handwriting of the parties themselves, of which latter number are the names, Henry Graff, for 100 shares, $5000, in his own proper handwriting; William Bingham & Co., for 100 shares, $5000, in the handwriting of William Bingham; Clarke & Thaw, for 100 shares, $5000, in the handwriting of Thomas S. Clarke.

The secretary of the company being called for the plaintiff, testified that this book had not been in the office since his appointment.

The defendants' counsel objected to plaintiffs' evidence as above stated, on the ground, 1. That it was irrelevant and incompetent; 2. Because the plaintiff had declared on an original subscription by defendants, and could not offer secondary evidence to establish it, without proof of an original subscription by them or by some one authorized by them, its contents, and loss, after proof of proper legal inquiry; and 3. Because the subscription-book containing the names of Hays & Black, in the handwriting of George Black, one of the firm, is not lost, but is present in court, ready to be used by the parties for any legal or legitimate purpose.

The court below (WILLIAMS, P. J.), after stating that the preliminary evidence to the court of the fact of a subscription by the defendants, as alleged, had shown that when the book containing it was seen by the witness who proved the subscription, it was in the hands of Mr. Stanton, from whom it had been procured by defendants' counsel; that the subscription of Hays & Black in it was admitted to be in the handwriting of Mr. Black, and that there was no evidence of the existence of any other subscription, decided that the legitimate inference seemed to be that the book produced was the original subscription, and that if so, it was the best evidence of the fact, and should be given in evidence by the plaintiff; but that if there was anything in the book or in the terms of the subscription which rendered it uncertain or doubtful, the plaintiff might then give the evidence offered, and the court would reserve the question as to its legal effect, in their instructions to the jury.

To the ruling of the court in relation to the introduction of secondary evidence, the counsel for the defendants excepted.

The plaintiffs then offered the book in evidence; which was objected to, on the ground that the contract of subscription offered was variant from the contract declared on; but the court overruled the objection, and admitted the evidence.

The plaintiffs then gave to the jury the secondary evidence above stated, which was admitted under exception, proving also

under exception by the stock-book or ledger of the company, the transfer of eighty shares of the stock held by Hays & Black to Mr. Stanton, at his request; the credits for the instalments paid by them from time to time; the calls made by the treasurer by order of the board of directors; and the published notice given of the several calls; and rested.

The defendants' counsel then offered the stock-book and ledger of the company, to show that their account with the company was balanced by the payments made by them and by the credit given for the transfer of the eighty shares to Mr. Stanton, which credit was charged on the books against Mr. Stanton. This was objected to by plaintiffs' counsel, " because it did not show payment directly or indirectly, legally or equitably." The objection was sustained by the court, the evidence rejected, and a bill sealed for defendants.

The defendants' counsel then submitted the following points, on which the instruction of the court was requested:

1. That the plaintiffs are not entitled to recover on the added count of the declaration, without proof by the plaintiffs that the moneys mentioned in said count were, as averred in said count, duly called for agreeably to the eighth section of the Act of said Commonwealth regulating railroad companies, and due and public notice of said calls published according to said Act; and that the evidence given by the plaintiffs is wholly insufficient to prove that said moneys were called for, and that public notice of said calls was published in manner aforesaid.

2. That the resolutions of the directors of said company in relation to the calls mentioned in the first point given in evidence by the plaintiffs, are respectively wholly insufficient to enable the plaintiffs to recover, on said added count, either principal or interest.

3. That if the plaintiffs are entitled to recover at all on said added count, such recovery must be limited to the principal sum unpaid, and simple interest from the time of suit brought.

4. That the plaintiffs are not entitled to recover on the first and second counts of the declaration.

5. That the plaintiffs are not entitled to recover, in this action, five dollars per share, or any other sum alleged to be due on the 12th day of August 1852, no call having been made for that alleged instalment by the directors of said company, as is required by the eighth section of an act "regulating railroads," passed February 19th 1859.

6. That the plaintiffs are not entitled to recover, in this action, five dollars per share, or any other sum alleged to be due on the 24th day of September 1852, no calls having been made for that alleged instalment by the directors of said company, as is re-

[Hays & Black *v.* Pittsburgh and·Steubenville Railroad Co.]

quired by the eighth section of an act "regulating railroads," passed February 19th 1849.

7. That the plaintiffs are not entitled to recover in this action, five dollars per share, or any other sum alleged to be due on the first day of March 1853, no call having been made for that alleged instalment by the directors of said company, as is required by the eighth section of an act "regulating railroads," passed February 19th 1849.

The court charged the jury, in substance, that, even conceding that defendants were not liable under the contract of subscription, given in evidence, their acts subsequent to that date and since the organization of the company, were such as to estop and preclude them from denying their liability as subscribers for the one hundred shares of stock, and that under the evidence they must be regarded as subscribers, whether they made any other subscription in writing than the one given in evidence or not. With regard to the question as to their liability for the one per cent. interest per month, the court held, that the evidence of the calls for instalments, and the notice, was sufficient to entitle the company to recover, except the instalment required on the 1st of March 1853, for which, as there was no evidence of a resolution authorizing a call, the plaintiff was only entitled to simple interest.

The points submitted were declined, except so far as allowed in the general charge; the fourth being entirely disregarded, for the reason that a recovery was asked only on the amended or third count. The jury were also instructed to allow the defendants credit for the payments made by them. Under this instruction, there was a verdict and judgment in favour of the plaintiff for $6621.76. The defendants thereupon sued out this writ, and assigned for error:

1. The admission of the subscription-book received from Mr. Stanton.

2. The admission of the secondary evidence offered by the plaintiff, as above stated, and noticed in the bills of exception.

3. The admission of the stock-book or ledger, for the purpose of fixing the number and amount of instalments.

4. The admission of the minutes of the board of directors, showing the calls for second, fourth, and subsequent instalments, with evidence of the publication of notice, as required by law.

5. The rejection of the stock-book of the company, offered by defendants to show that their account with the company was balanced by the payments made by them, and the shares transferred to Mr. Stanton.

6, 7, 8, 9, 10, 11, and 12. In refusing to charge the jury as requested in the first, second, third, fourth, fifth, sixth, and seventh points.

[Hays & Black *v.* Pittsburgh and Steubenville Railroad Co.]

13. In charging that defendants were estopped by their acts, &c., from denying that they were stockholders.

14. In charging as was done, on the question of the defendants' liability for interest; and

15. In declining to answer defendants' points.

*A. W. Loomis,* for plaintiff in error.—1. The evidence varied from the contract as laid in the plaintiffs' *narr.* The contract averred was a subscription for one hundred shares to the capital stock of the Pittsburgh and Steubenville Railroad Company; the contract offered in evidence, was a promise that defendants would subscribe the shares (100) and amount ($5000) set opposite their names, without naming the company plaintiff: Pittsburgh and Steubenville R. R. Co. *v.* Gazzam, 8 Casey 340. The contract averred was one which required defendants to pay from time to time, when called for *according to the Act of Assembly regulating railroad companies;* the contract received in evidence contained no such stipulations. The variance was fatal: 1 Phil. Ev. 159, 160; 1 Ch. Pl. 304–310; 1 Gr. Ev. 66; Umbehocker *v.* Rassell, 2 Yeates 339; Funk *v.* Arnold, 3 Yeates 428; Schoeneman *v.* Fegly, 7 Barr 438.

2. The original contract was present, and therefore the secondary evidence of plaintiff was improperly received; for the case was presented on a single contract in a single count.

3. (The third assignment of error was not noticed in the written argument of the learned counsel.)

4. The evidence of the resolution ordering the calls was insufficient. Charters must be construed strictly against the corporation: 1 Sharswood's Blackstone 87; Mayor *v.* R. R. Co., 7 Ga. Rep. 22; Sprague *v.* Birdsall, 2 Cowan 420. The minutes were not properly kept: Dunlop's Dig. 1137; Pittsburgh and Steubenville Railroad Company *v.* Clark & Thaw, 5 Casey 152.

5. The stock-book showed that the account of Hays & Black with the company was balanced, and the company's claim therefor extinguished; it was therefore improperly rejected.

The remaining errors were not alluded to in the written argument.

*Geo. P. Hamilton,* for defendants in error, argued—1. That the points of defence made here were all settled by this court against the plaintiffs in error; citing Graff *v.* P. & S. R. R. Co., 7 Casey 489; Cromfort & Highpark R. R. Co. *v.* Lacey, 3 Younge & Jervis 79. The contract in evidence complained of, was not offered by plaintiffs of their own motion, but by order of the court; but being ultimately ruled out in the charge, did the other side no harm.

2. The other evidence objected to, and on which the case went

to the jury, was not secondary but primary: Bavington *v.* The P. & S. R. R. Co., 10 Casey 358; P. & S. R. R. Co. *v.* Clark & Thaw, 5 Casey 146; Graff *v.* P. & S. R. R. Co., 7 Casey 490.

3. The evidence objected to in this assignment of error, was sustained in the case between Livingston and this company, and also in Bavington's Case, 10 Casey 358. The books of the corporation are evidence in a suit against its members.

4. The objection as to the calls was settled in Bavington's Case, 10 Casey 358. When the third call was made, Black was a director, and cannot now object that no entry of it was made on the minutes. The fifth and other assignments of error, are answered in effect by the authorities above referred to.

The opinion of the court was delivered, January 7th 1861, by STRONG, J.—The exception to the admission in evidence of the book obtained from Mr. Stanton requires no discussion. For if it be admitted that it was variant from the contract of subscription declared on, if it was in fact no contract at all with the plaintiffs below, as it seems to have been, its reception in evidence could have done no harm. Upon the contents of that book there could have been no recovery, and there was none. Had no other contract of subscription been proved than the one contained in that book, if the defendants had done nothing else to fasten upon themselves a liability for a subscription, they would have been safe. Then the contract averred in the declaration would not have been proved, and under the instruction given by the court to the jury, there must have been a verdict against the plaintiffs. A recovery was not claimed upon the contract written in that book, and the jury were not suffered to regard it as evidence of liability on the part of the defendants. If the verdict rendered was an inevitable necessity occasioned by the other evidence submitted on the trial, surely the defendants have no substantial cause of complaint. If that evidence conclusively established that they had subscribed one hundred shares to the stock of the plaintiffs,—if by their conduct by acting as directors of the company, making payments of instalments in answer to calls voted for by themselves, and by certifying themselves as original subscribers, or permitting such a certificate, in order to obtain a subscription from the City of Pittsburgh, they had put it out of their power to deny that they were subscribers, and if only the amount of the subscription thus recognised by them has been recovered, it would be idle to reverse the judgment because some other immaterial and harmless evidence was admitted. Then it is not a case in which evidence has been erroneously received, which may have contributed to the verdict. This court can see that no injury has been done.

The second assignment of error is to the admission of proof

of such acts of the defendants as in the case of Graff against the Pittsburgh and Steubenville Railroad Company, 7 Casey 494–5, were held sufficient to establish a subscription, without the production of the original contract. These acts were, such as serving as directors of the company by both the defendants, after the commissioners had reported to the governor the names of the original subscribers, including a subscription by Hays & Black for one hundred shares, and after letters patent had been issued and engrossed upon the minutes of the company. Other acts of the defendants were, serving as judge at a meeting of the stockholders; holding themselves out as owners of one hundred shares of stock; offering to transfer some of those shares; making payments on account of instalments; and active participation in a movement to obtain a municipal subscription from the city of Pittsburgh, which was obtained on the faith of an actual subscription certified to have been previously made by individuals, among whom the defendants are named as subscribers for one hundred shares. These acts are such as were held in the case cited to be not merely evidential of an original subscription, but conclusive, amounting to an estoppel upon the defendants against denying it.

The objection to the admission of this evidence is, that it was secondary, that the primary proof was within the reach of the plaintiffs, and that it had actually been laid before the jury in the book obtained from Mr. Stanton. The answer to the objection is direct and easy. It is fallacious in assuming that the Stanton book was primary evidence of the identical thing, of which that received by the court was secondary proof. The evidence received was not secondary to anything contained in that book. It indicated the existence of a subscription to the stock of the plaintiffs, but it did not point to any such writing as the defendants allege was the original contract. On the contrary, it pointed to an entirely different subscription, in regard to which there was full preliminary proof that it could not be found. Of that other subscription, the one declared upon, it was the best evidence of which the case was susceptible, assuming that the proof was made that the original could not be produced. And if the first piece of evidence offered by the plaintiffs, failed to prove their case as laid, it cannot be doubted that it was competent for them to adduce other and more pertinent proof.

Most of the questions raised by the remaining assignments of error, thirteen in number, have been settled, and adversely to the defendants, by the decisions heretofore made by this court in Railroad Company *v*. Clark & Thaw, 5 Casey 146; Graff *v*. Railroad Company, 7 Casey 490; Bavington *v*. Railroad Company, 10 Casey 358; and in Livingston *v*. the same company, a case not reported; Pittsburgh Legal Journal, vol. 6, 337.

The third assignment calls in question the admission of the stock ledger of the company.   That it was proper evidence against members of the company who had acted as directors, was held in the cases of Livingston and Bavington against these plaintiffs, above referred to.

The fourth, sixth, seventh, tenth, eleventh, twelfth, and fourteenth assignments may be considered together.   They attack the sufficiency of the evidence that calls were made for the instalments on the stock subscribed.   They might all be dismissed with the remark that the same evidence was adjudged sufficient in the case reported in 10 Casey 358.   But it may be well to notice what the evidence was :—George Black, one of the defendants, was elected a director in January 1852, and acted as such during the whole of that year, and part, if not all of the next. At a meeting of the board, on the 1st of July 1852, when Mr. Black was present, it was unanimously resolved, that the treasurer be directed to call in a second instalment of the capital stock of the company.   The proportion or amount of said instalments, and the time and place of payment, were not mentioned in the resolution; but on the 28th of July, notice was given by the treasurer that the second instalment of five dollars per share was called in by order of the board of directors, payable on the 12th of August then next ensuing at a designated place.   A similar notice of a call for a third instalment of five dollars on each share, was given on the 11th of September 1852, though no resolution authorizing it appears on the minutes.   On the 12th of November 1852, however, at another meeting of the board at which Mr. Black was again present, it was resolved unanimously, that the fourth instalment be called in, to be paid into the treasury, on or before the first of December next thereafter, and that an instalment be called in, and made payable on the first day of every month thereafter, until the whole number of instalments shall have been paid, and the treasurer was directed to give notice accordingly.   Following this resolution, was a notice by the treasurer, requiring the payment of the fourth instalment of five dollars on or before the first of December, and five dollars a share on or before the first day of each month thereafter, until the whole amount subscribed for should be paid.   The evidence also exhibited the fact that the defendants had made payments on account of each of the ten instalments, at different times, the last on the 20th of June 1853.   Such was the evidence offered and received to establish the plaintiffs' averment that calls were duly made.   Now were we to hold that proof of these facts was not properly submitted to the jury, because it was not evidence that calls for instalments had been duly made, we should be, in our judgment, trifling with the administration of justice. It is insisted that it fails to show that the directors specified the

[Hays & Black v. Pittsburgh and Steubenville Railroad Co.]

times and places of payment, and the proportions or amounts of each instalment, and it is denied that proof of such specification can be made in any other way than by the minutes of the board. The treasurer's notices did fix the amount of each instalment, and the time and place of payment. The treasurer was the instrument of the board of directors, and was by them required to give notice of the calls which they had made. Why then was not his action their action? It is time that the law required them to keep minutes of their proceedings, fairly entered in a suitable book to be kept for that purpose, but it does not follow from this that every act of theirs not recorded is of no effect. The remarks of Chief Justice Lewis, in The Pittsburgh and Steubenville Railroad Company v. Clark & Thaw, 5 Casey 152, do not go to that extent. Nor can it be said that the statutory direction to keep minutes of their proceedings, required that full and minute details of every act should be recorded. And how can these defendants be permitted to deny that the directors fixed the amount of each call, and the time and place of each payment, when the calls were made by one of themselves? If these particulars of the calls should have been spread upon the minutes, whose fault is it that they were not? Can these defendants relieve themselves from liability, by setting up their own failure to keep proper minutes? Shall they be permitted to say that the calls under which they required payment from other subscribers are insufficient to charge them? May they do this in face of the fact that they recognised their sufficiency, by making partial payments upon each of the instalments? We cannot return an affirmative answer to these questions. Whatever others might do, it is not for these defendants to say there was no adequate proof that the calls were duly made.

The evidence in regard to the calls for the third and the seventh instalments, is singled out for especial attack. Of the third, the treasurer gave notice, and that its payment was required at his office, on the 24th of September 1852. The minutes, however, show no resolution authorizing such notice. But the defendants made a payment in answer to the call, and thus admitted that it had legally been made. And more than this, on the 12th of November, a resolution was passed by the directors, and duly recorded, directing a call for all the unpaid instalments. For this resolution, Mr. Black voted, and in pursuance of it, the treasurer gave notice, that the instalments were required to be paid monthly until the whole amount subscribed for had been paid in. If there had been no legal call for the third instalment before, there certainly was one by this resolution of the 12th of November 1852; and whether it was made payable on the 24th of September or at a later day, is of no consequence to the defendants, for they were not charged with interest on it. The

[Hays & Black *v.* Pittsburgh and Steubenville Railroad Co.]

objection to the seventh call is, that there were not thirty days between the 1st of February and the 1st of March 1853, on which days the sixth and seventh instalments were made payable. It is enough to say in reply to this, that one of the defendants participated in the call, and that its validity was recognised by a payment in answer to it. None of these assignments of error, therefore, could be sustained, even if they had not been condemned by former adjudications.

The fifth specification of error, is to the refusal of the court to permit the stock-book and the ledger of the company to go to the jury as evidence of payment, for the whole amount of the defendants' subscription. The stock-book was already in evidence, offered by the plaintiffs, showing a memorandum that eighty shares had been transferred by Hays & Black to E. M. Stanton, but no actual transfer. The company's ledger exhibited the defendants' stock account for one hundred shares, in which credit was given for the payments made by them, already proved by the plaintiffs, and also a credit for $4000 for eighty shares of stock transferred to E. M. Stanton. The book showed also the same amount charged to Stanton for the same stock, and the account of the defendants was balanced. The purpose of this offer of the defendants was to show that the company had accepted the transfer by them of eighty shares to E. M. Stanton, as payment of four thousand dollars, and had discharged them *pro tanto* from so much of the liability incurred by their original subscription. That the entries in these books were utterly insufficient to establish such a payment or discharge, and that they did not tend to establish it, was ruled in the case of these very plaintiffs *v.* Clark & Thaw, 5 Casey 146, (incorrectly reported "Pittsburgh and Connellsville Railroad Company.") The same was ruled in Graff *v.* The Pittsburgh and Steubenville Railroad Company, 7 Casey 489. We shall not renew the discussion. We adhere to what was then decided, and we are unable to perceive how it can make any difference in the construction of the Act of Assembly under which this company was incorporated, or in the effect of the evidence under consideration, that a portion of it was offered for a different purpose by the plaintiffs on this trial, while it was adduced by the defendants in the former cases.

The remaining assignments of error need no particular notice. It results from what has already been said, that they are unsubstantial.

The judgment is affirmed.